UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
LESCO, INC.,

                Plaintiff,                CV 05-3207 (TCP) (MLO)

  -against-                                **MEMORANDUM** and
                                           **ORDER**
JAMES V. MASONE and
PATRICK J. CASH,

                Defendants.
----------------------------------------------------------X
PLATT, District Judge.

        Plaintiff Lesco, Inc., ("Lesco" or "the Company") moves this Court to (i) find Defendants James V. Masone ("Masone") and Patrick J. Cash ("Cash") in civil contempt, (ii) impose equitable and monetary sanctions on Defendants, and (iii) expedite discovery in these proceedings. Lesco argues that Defendants wilfully violated this Court's Final Judgment on Consent ("Consent Judgment"), entered on December 7, 2005. Masone and Cash respond that Plaintiff did not submit any evidence that Defendants violated the Consent Judgment, wilfully or otherwise, and they request an award of attorney's fees for defending this proceeding. For the following reasons, this Court **DENIES** both Plaintiff's Motion and Defendants' request for attorney's fees.

## INTRODUCTION

1.    *The Plaintiff*

        Lesco is a manufacturer and seller of products for turf care

professionals, including lawn and turf care equipment, seed, fertilizer, irrigation systems, and pest control products. (*Id.* ¶ 1.) Lesco's customers include golf courses, athletic fields, and professional lawn care companies that maintain landscapes around apartments, office complexes, government buildings, cemeteries and private homes. (*Id.* ¶ 1.)

There are about 135 golf courses on Long Island, of which Plaintiff services about 90. (05-3207, Transcript of Hearing, May 23, 2006 ("Tr.") at 60.) On Long Island, the golf course turf care industry is relatively small and is highly competitive. (*Id.* ¶ 2.)

Lesco has developed customer relationships through use of sales representatives and Lesco's "Store-on-Wheels®" ("SOW") program, in which sales representatives visit golf course superintendents in trucks containing various Lesco products. (*Id.* ¶ 3.)

2. *The Defendants*

In 1990, Defendant Masone was hired by Lesco to work in its Golf Division as part of Lesco's SOW program, covering golf courses from Staten Island to Montauk. Masone drove the only Lesco SOW vehicle on Long Island from 1990 to 1995, and from 1995 to July 2005 worked as Lesco's sales representative for all of its golf course customers on Long Island.

In 2002, Lesco hired Defendant Cash, who also worked as a sales representative in Lesco's SOW program. (*Id.* ¶ 5.) Like Masone, his territory

included all of Long Island.

3.   *Covenant not to Compete*

Defendants entered into written, signed agreements (the "Agreements") when they began employment with Lesco, which contained non-compete, non-solicitation, and non-disclosure covenants. (*Id.* ¶ 9.) These Agreements also contained an express "Covenant Against Unfair Competition", which provided:

> [F]or twelve (12) months after such employment ends for any reason, Employee will not, either directly or indirectly, (i) perform any sales, service, marketing or supervisory work for or at any competing business entity's facility located within fifty (50) miles of Employer's location . . . or (ii) call on, solicit or have business communications with any customer or prospect of Employer for the purpose of obtaining any [professional turf care] Industry business from such customer or prospect other than for the benefit of Employer.

(Defendants' Answer Exs. A and B, ¶ 3(c).)

The Agreements also provided that, while employed by Lesco and for twelve months thereafter, Masone and Cash would not "induce or attempt to induce or influence any employee of Employer to terminate employment with Employer". (Defendants' Answer Exs. A and B, ¶ 3(b).)

4.   *Temporary Restraining Order and Consent Judgment*

In late June 2005, Lesco received a letter from a lawyer representing both Masone and Cash stating that they desired to terminate their

employment with Lesco, and that they intended to continue to work in the turf care industry. (Bergamo Decl. ¶ 14 and Ex. C.) Soon after, Defendants left the Company.

On July 5, 2005, Lesco commenced this case against Defendants, seeking an injunction to prevent them from competing. (*See* Pl.'s Post Hearing Mem. Supp. Mot. Civil Contempt ("Pl.'s Post Hearing Mem.") at 7.)

At the end of August 2005, Lesco allegedly obtained direct evidence that Masone and Cash, no longer employed by Lesco, were breaching their agreements not to compete. (*See* Pl.'s Post Hearing Mem. at 5-6.) Masone was observed by Lesco employees delivering cases of a fungicide called Dithane, which Lesco also carried, to Hampton Hills Golf and Country Club and Huntington Crescent Club. (*See* Pl.'s Post Hearing Mem. at 5-6.) Lesco hired an investigator who determined that a company called Island Turf Services, Inc. ("ITS") had been incorporated on July 8, 2005 using Defendant Cash's home address, and that ITS had sold turf care products to several other golf courses. (*See* Pl.'s Post Hearing Mem. at 6-7.)

On October 7, 2005, this Court granted Lesco's Application for a Temporary Restraining Order, and scheduled an Evidentiary Hearing on Lesco's Motion for Preliminary Injunction. (Pl.'s Post Hearing Mem. at 8.)

In November 2005, Lesco and Defendants signed a Settlement Agreement, which included a Final Judgment on Consent. The Consent Judgment was adopted and entered by this Court on December 7, 2005. In light of the

settlement, Plaintiff withdrew its Motion for Preliminary Injunction.

The Consent Judgment was basically a Court order of the covenant not to compete. It enjoined Defendants from

> until July 1, 2006, either directly or indirectly (i) performing sales, service, marketing or supervisory work for or at any competing business entity's facility located within the Long Island territory . . . and/or (ii) calling on, soliciting or having business communications with any customer that purchased from Plaintiff within twelve months proceeding cessation of Defendant's employment with Plaintiff or prospect that received any written bid or proposal from Plaintiff within twelve months preceding cessation of Defendants' employment with Plaintiff for the purpose of obtaining any Industry business from such customer or prospect rather than for the benefit of Plaintiff.

(Consent Judgment at 9 (internal quotation omitted).)

5. *Defendant's actions subsequent to the injunction*

Plaintiff alleges Defendants have recommenced their calling on, soliciting, and having business communications with Lesco's Long Island customers that Defendants previously serviced when employed by Lesco, in violation of the Court's injunction. Plaintiff submitted a Motion for Contempt on May 1, 2006. This Court held an evidentiary hearing on May 23, 2006, in which Plaintiff's current Long Island sales representative, Thomas Stylarek ("Stylarek"), and Masone both testified. Their testimony addressed Defendants' employment with DeLea & Sons Sod Farms Incorporated ("DeLea") as well as their contacts with four golf courses. We shall take each point in turn.

a. DeLea & Sons Sod Farms Incorporated

Plaintiff alleges that DeLea is a company in the professional turf care industry, and that Defendants violated this Court's injunction by working for DeLea. (Pl.'s Post-Hearing Mem. at 18.) Plaintiff's only evidence that Defendant Cash worked for DeLea was that Stylarek allegedly saw Cash driving a DeLea flatbed sod truck on Jericho Turnpike. (Tr. 21-22.) Cash was not called to testify at the hearing, so there is no corroboration for Stylarek's testimony.

Masone testified that he worked for DeLea making primarily sod deliveries, and that he was not involved with turf care products. (Tr. 47.) Masone only visited one golf course for DeLea, Piping Rock Club, to re-activate Piping Rock as a sod customer. (Tr. 48.) According to Masone, Piping Rock was completing two bunker renovations and needed a specific type of sod, not any maintenance or turf care. (Tr. 62.)

Stylarek testified that Lesco does not sell sod. (Tr. 35.) Lesco, though, sells seed and DeLea has a retail outlet which sells seed. However, the retail outlet is a separate company from DeLea & Sons Sod Farms, and Masone worked only for DeLea & Sons, not the outlet. (Tr. 49.) One of the DeLea companies also sells fertilizer, another product that Lesco sells. However, it is unclear which of the DeLea companies sells fertilizer, and there is no evidence that Masone himself sold fertilizer.

b. South Fork Country Club

6

On March 6, 2006, Stylarek visited the South Fork Country Club in Amagansett, New York. (Pl.'s Post Hearing Mem. at 11.) When Stylarek arrived, the golf course superintendent, Frank Belluci, was in his office with Masone. Stylarek alleges that Masone "looked a little stunned that I had seen him there . . . ." (Tr. 15.) Masone and Belluci allegedly went to Masone's truck after exiting the office, however, Stylarek could not actually see them because they went around the side of the building out of sight. (Tr. 15, 31.) When Belluci returned, he stated that Masone could not sell anything until July 1st of this year. (Tr. 16.) Stylarek stated that Belluci was not interested in purchasing from Lesco on that visit.

Masone testified that he was at South Fork having a personal visit with Belluci, and that they had been personal friends since 1995. (Tr. 54.) They discussed holidays, kids, and a proposed ski trip. (Tr. 55.) Belluci declared the same in his affidavit. (*See* Belluci Aff. ¶¶ 2-4.) Plaintiff offers no evidence to contest these statements. Indeed, Stylarek never contacted Masone to ask him why he was at South Fork and he never asked Belluci why Masone was there. (Tr. 32-33.)

On March 20, 2006, Stylarek returned to South Fork in Lesco's SOW vehicle. Belluci allegedly did not walk over to the SOW like he usually did, and his assistant Tony only bought a small quantity of tangential products such as gloves, respirators, and miscellaneous seed. (Stylarek 2d Decl. ¶ 9.) On the basis of Stylarek's testimony, Plaintiff argues that Belluci did not buy from

Lesco because Masone had "pre-sold" fertilizer and seed to the South Fork Country Club for the upcoming season. (Stylarek 2d Decl. ¶ 11.) Belluci disputes the claims. He declared that his company did not make a full purchase of Lesco's lawn care products in the Spring of 2006 because they had already purchased a substantial part of their lawn care products need for 2006 from Lesco in the Fall of 2005 in Lesco's Early Order Program. (Belluci Aff. ¶ 9.)

    c.    Southward Ho Country Club

Stylarek testified that he believed Masone visited another golf course located at Southward Ho Country Club. (Tr. 17.) The assistant superintendent of Southward Ho told Stylarek the "mini guinea [Jim Masone] was here the other day." (Tr. 17.) Stylarek further testified that he never asked the assistant superintendent why Masone was there, or called Masone and asked him. (Tr. 39.)

Masone testified that he was at Southward Ho golf course in late March because "he was basically on a job interview with [the general manager of DeLea]." (Tr. 52.) Masone did not see the superintendent or the assistant superintendent. (Tr. 53.) No witnesses from Southward Ho were called by Plaintiff, nor were any documents introduced into evidence. (Defs.' Post-Hearing Mem. ¶ 2.)

    d.    Great Rock Golf Course

Plaintiff also alleges that Masone was at Great Rock golf course in Wading River. (Tr. 18.) Stylarek testified that he asked the superintendent if he (the superintendent) received sod from Masone, and the superintendent answered "no, no." (Tr. 18.) The superintendent further stated, "Masone can't work for DeLea, because it's - - it would be detrimental to his business. He doesn't want to hurt his forthcoming business coming ahead." (Tr. 19.) Plaintiff concludes from these statements that Masone visited Great Rock. However, Stylarek stated he does not know if Great Rock obtained sod from Masone, (Tr. 45) or even if Masone visited Great Rock. (Tr. 46.)

e. Sebonac Neck Golf Course

Stylarek was allegedly told by the assistant superintendent of Sebonac Neck Golf Course that the superintendent, Garrett Bodington, was "going to a DEC [Department of Environmental Conservation] seminar that day with Masone." (Stylarek 2d Decl. ¶ 14.) Masone testified that Bodington called him to ask if he (Masone) knew of any meeting going on for the DEC, but that he did not attend a meeting with the superintendent. (Tr. 53.) Plaintiff does not have any witnesses from Sebonac, any phone records, or any physical evidence that Bodington or Masone went to any DEC seminar.

In sum, Stylarek testified that he only saw Masone at South Fork Country Club, and not at any other golf course. (Tr. 20.)

9

## DISCUSSION

1. **Civil Contempt Standard**

A party is only held in civil contempt when (1) the court order alleged to be violated is clear and unambiguous, (2) proof of noncompliance is clear and convincing, and (3) the non-compliant party has not diligently attempted to comply in a reasonable manner. *New York State Nat. Organization for Women v. Terry*, 886 F.2d 1339, 1351 (2d Cir. 1989), *cert. denied*, 495 U.S. 947 (1990). A party seeking to hold another in civil contempt bears the burden of proof to establish the offense by clear and convincing evidence. *Levin v. Tiber Holding Corp.*, 277 F.3d 243, 250 (2d Cir. 2002). "In the context of civil contempt, the clear and convincing standard requires a quantum of proof adequate to demonstrate a 'reasonable certainty' that a violation occurred." *Id.* (quoting *Callanan Indus., Inc. v. White*, 123 A.D.2d 56, 510 N.Y.S.2d 230, 231 (3d Dept. 1986)). The clear and convincing evidence standard lies at an intermediate point between the "preponderance of the evidence" standard appropriate to most civil cases and the "beyond a reasonable doubt" standard employed in criminal prosecutions. *See Addington v. Texas*, 441 U.S. 418, 423-25 (1979).

2. **Application of the Civil Contempt Standard**

Plaintiff alleges that Masone was "soliciting", "having business communications" with, or at least "calling on" Lesco customers that had purchased from Masone in his last year as a Lesco employee "for the purpose of

obtaining any Industry business from such customer or prospect rather than for the benefit of Plaintiff", in violation of the Consent Judgment. (Pl.'s Post-Hearing Mem. at 16-17.) The evidence presented by Plaintiff is insufficient to meet Plaintiff's burden of proof under the clear and convincing standard, and thus Plaintiff fails to meet the second prong of the test for civil contempt.

      a.    *Contact with Golf Courses*

Although Plaintiff alleged that Defendants had contact with many golf course decision makers, Stylarek only observed Masone talking to one manager, Belluci, at South Fork Country Club. (Tr. 20.) Thus, there is no evidence, clear and convincing or otherwise, that Defendants had business communications with golf course managers other than Belluci. As for Masone's meeting at South Fork, both he and Belluci made uncontested statements that the meeting was personal and had nothing to do with business.[1] (Tr. 54-55; Belluci Aff. ¶¶ 2-4.) Masone's meeting, by itself, does not violate the Consent Judgment, because the Judgment prevents Defendants from having "business communications" with Lesco's competitors, but does not bar all contacts.

      b.    *Work done for DeLea*

Plaintiff also alleges that Defendants violated the Consent

---

[1] Plaintiff cites Belluci's statement to Stylarek that Masone could not sell to him (Belluci) until July 1, 2006 as evidence of Defendants' violation of the Consent Decree. To the extent the Court gives weight to such statement, which Belluci neither testified to nor declared, we find that it merely indicates Masone planned on complying with the Consent Decree, not violating it.

11

Judgment by working for DeLea. However, the Consent Judgment does not contain any language stating that the Defendants could not work specifically for DeLea, only that Defendants could not work for a "competing business" located on Long Island.[2] DeLea Sod Farms Inc. only sells sod to golf courses (Tr. 49), and Masone and Stylarek both testified that Lesco does not sell sod. (Tr. 35, 47.) Plaintiff did not introduce any evidence regarding DeLea's literature, sales quotes, deliveries, or phone records concerning DeLea's product line or status as a competitor. Because Plaintiff does not bring forward clear and convincing evidence that DeLea competes with Lesco in the turf care products industry, this Court finds that Defendants work for DeLea does not violate the Consent Judgment.

    c. *Other allegations*

Plaintiff's allegations that Defendants (i) jointly discussed leaving Lesco in violation of the non-solicitation covenants, and (ii) created ITS as a competitor to Lesco is not evidence of civil contempt as it occurred before this Court issued the Consent Judgment.

**3.    Plaintiff's Additional Requests**

As Plaintiff failed to show by clear and convincing evidence that

---

[2] Plaintiff claims in its Post-Hearing Mem. that Defendants specifically agreed not to work for DeLea & Sons Sod Farms; (Pl.'s Post Hearing Mem. at 17) however, this prohibition was not in the Court ordered Consent Judgment, and thus cannot be the basis for holding Defendants in contempt.

Defendants violated the Consent Judgment, the Company is also not entitled to its other requested relief - extension of the injunction, monetary damages, and expedited discovery.

**4.      Defendants' Request for Attorney's Fees**

Masone and Cash request attorney's fees for defending against this contempt proceeding. However, they cite no case law in which a Court awarded attorney's fees to a prevailing Defendant in a civil contempt proceeding. They also provide no clear factual basis for granting such fees. Accordingly, Defendants request is denied.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion is **DENIED** and Defendants' request for attorney's fees is similarly **DENIED**.

**SO ORDERED.**

/S/_____
Thomas C. Platt, U.S.D.J.

Dated: July 27, 2006
       Central Islip, New York